# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| MELISSA ANN FOSSETT,             } | |
| }                                   | |
| Plaintiff,             }            | |
| }                                   | |
| v.                              }   | Civil Action No.: 4:13-CV-01574-RDP |
| }                                   | |
| CAROLYN W. WILSON,               }  | |
| Acting Commissioner of Social Security,  } | |
| }                                   | |
| Defendant.             }            | |

## MEMORANDUM OF DECISION

Plaintiff Melissa Ann Fossett brings this action pursuant to Title II of Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her claims for a period of disability and disability insurance benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

This action arises from Plaintiff's application for disability and DIB, dated March 12, 2010, alleging disability beginning on October 15, 2009. (Tr. 111). Plaintiff's application was initially denied by the Social Security Administration on July 14, 2010. (Tr. 47). Plaintiff subsequently requested and received a hearing before an Administrative Law Judge ("ALJ"). (Tr. 58-65, 84). The hearing was held on February 21, 2012, via video conference in Birmingham, Alabama. (Tr. 23-38). Plaintiff appeared in Gadsden, Alabama, and was accompanied by her attorney. (Tr. 23). Also present at the hearing was a vocational expert

("VE"). (*Id.*). In his decision dated April 6, 2012, the ALJ found Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (Tr. 19). The Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making that decision (1) the final decision of the Commissioner, and (2) a proper subject of this court's appellate review. (Tr. 1).

At the time of the hearing, Plaintiff was forty-five years old and had completed a high school education. (Tr. 111, 116). Plaintiff previously worked as an electronics assembler and group leader of circuit board assembly. (Tr. 34). Plaintiff's last day of work was October 15, 2009; she testified she was fired because of her frequent absences. (Tr. 32, 115). Plaintiff alleges limitations due to cervical facet syndrome, degenerative disc disease with chronic back pain and headaches, SI Syndrome, and lower back sciatic nerve pain. (Tr. 26, 145). Plaintiff also has diagnoses of Diabetes Mellitus, hypertension, and past kidney stones. (Tr. 177). In her application for disability benefits, Plaintiff noted that her daily activities included cooking breakfast, lunch and dinner, taking care of her child and grandchildren,[1] and doing household chores such as washing dishes, laundry, sweeping, and vacuuming. (Tr. 133). Plaintiff further noted she was able to shop for "food and necessities." (Tr. 31, 134).

In contrast, during the hearing Plaintiff testified that she cannot sit, stand, or walk for a long period of time due to pain. (Tr. 28). She stated that she cannot lift more than ten (10) to fifteen (15) pounds, and that she has headaches everyday with one "real bad" headache each week. (Tr. 28-30). Plaintiff described the headache pain as "excruciating," and stated that she "take[s] a Zanaflex and relax[es] back," but that Zanaflex (as well as Lortab) make her sleepy. (Tr. 28-31). When discussing her pain with the ALJ, Plaintiff rated her pain on an average day

---

[1] Plaintiff's child was sixteen years old and her grandchildren were ages four and five at the time of the hearing.

as a nine (9) on a ten (10) point scale. (Tr. 31). In response to the ALJ's question regarding her recent ablation procedure, Plaintiff stated it only helped "a little bit." (Tr. 32). When asked about her daily activities, Plaintiff stated, "I lay around, kick back in my recliner because I'm hurting so bad I can't function. I can't even do housework." (Tr. 31). Plaintiff also represented to the ALJ that she needs assistance caring for her two step-grandchildren. (Tr. 32-33).

     Plaintiff's past medical history is extensive. In 2003, she underwent anterior cervical discectomy and fusion. (Tr. 160). In 2008, she was treated for SI Syndrome with a series of injections and physical therapy, in addition to two epidural blocks for back pain. (Tr. 172, 179, 180-81, 198). During her alleged period of disability, Plaintiff regularly sought treatment from Dr. Craze at Grant Family Medicine for a variety of ailments, but most notably for complaints of headaches, which were reportedly made worse after she suffered a fall at work in 2009. (Tr. 188, 340). In records from Grant Family Medicine, Plaintiff reported experiencing "shooting pain" and swelling in her neck on November 2, 2010. (Tr. 266). Due to her recurring neck pain, Plaintiff was also seen by Marshall Medical Center North Pain Clinic[2] ("Pain Clinic") and the Spine & Neuro Center for treatment. (Tr. 250-62, 304-29).

     From August 2010 through November 2011, Plaintiff received approximately eleven injections/medial branch blocks. (Tr. 250-51, 257, 259, 261, 287-88, 294, 307, 317). Records from the Pain Clinic show Plaintiff was afforded "100% relief" and her pain was "still better today than it was before." (Tr. 259-60). On another occasion, the record shows that Plaintiff again received "100% relief" for a period of "over two months," and had "excellent relief from prior epidural steroid injections." (Tr. 252, 255). The Spine & Neuro Center records state that after receiving physical therapy and a nerve block, Plaintiff noted fifty percent (50%) relief of

---

[2] Plaintiff incorrectly refers to Marshall Medical Center South Pain Clinic in her brief. (Pl's B. at 5). The clinic where Plaintiff was treated was, in fact, Marshall Medical Center *North* Pain Clinic. (Tr. 249-62).

3

her pain, despite having a reoccurrence of headaches. (Tr. 313). Plaintiff has not received treatment for her alleged disability, except pain medications, since November 2011 due to inability to pay her copay. (Tr. 27).

Upon request of the Social Security Administration, Dr. Yousem Ismail saw Plaintiff for an examination on June 21, 2010. (Tr. 237). During that evaluation, Plaintiff reported that she had a spinal block in the past that "did not help much," and had taken part in physical therapy "without much relief." (Tr. 238). Dr. Ismail noted Plaintiff's gait was normal and she did not require an assistive device to walk. (Tr. 240). Dr. Ismail further noted that "[p]roper medical evaluation, weight reduction, as well as occupational and physical rehabilitation will be beneficial for [Plaintiff]." (*Id.*).

On July 14, 2010, Dr. Robert Heilpern completed a Residual Functional Capacity assessment ("RFC") of Plaintiff. (Tr. 241). The RFC showed that Plaintiff was capable of occasionally lifting twenty (20) pounds, and frequently lifting ten (10) pounds. (Tr. 242). It was determined that Plaintiff was capable of sitting, standing/walking for a total of six (6) hours in an eight (8) hour work day. (*Id.*). Additionally, Plaintiff was capable of frequently climbing ramps/stairs, balancing, kneeling, and crawling, and found to be capable of occasionally stooping, and crouching, but never capable of climbing a ladder, rope or scaffolds. (Tr. 242-43). Based on a review of the record, Dr. Heilpern determined that Plaintiff's complaints of symptoms were only "partially credible," because the objective evidence did not support the level of severity alleged. (Tr. 246).

At the time of the hearing, Plaintiff had not yet received a disability statement from her primary physician, Dr. Craze; however, that statement was received and reviewed before the ALJ issued his decision. (Tr. 27). In the disability statement, Dr. Craze reported that Plaintiff had

been a patient since 2007, and that her "main problems include degenerative disc disease throughout her back" and her pain from that disease is "concentrated in her neck and shoulders." (Tr. 340). Dr. Craze also stated that Plaintiff's cervical discectomy in 2003 led to "persistent off and on pain." (Tr. 340). Dr. Craze added that Plaintiff has frequent headaches "arising from the back of her neck and going into her head." (*Id.*). Dr. Craze also reported that Plaintiff takes some medications that impair her ability to function. (*Id.*). Dr. Craze ended her statement by stating that Plaintiff had missed work due to her pain, which is a "chronic, long-term condition and she will have frequent flare-ups." (*Id.*).

During the hearing, the ALJ posed hypothetical questions to the VE. (Tr. 33). In the first hypothetical, the ALJ asked if a person with the same education, training, and work experience, limited to light exertion[3], could perform Plaintiff's past relevant work. The VE stated that the person could, in fact, perform the work. (Tr. 35). The ALJ then posed a second hypothetical, including the same qualities of the individual in the first hypothetical, but adding a limitation that the individual could lift and carry fifteen (15) pounds, but would require a sit or stand option.[4] Again the VE stated that the person could perform the work. (Tr. 36). In the third hypothetical, the ALJ added the elements of breaks and absences. (*Id.*). The ALJ asked the VE what the vocationally acceptable tolerance for both breaks and absences would be for an individual with the same qualities discussed in the previous hypotheticals. (*Id.*). In response, the VE stated that the individual should be on break for no more than one (1) hour total during an eight (8) hour workday, and should not miss more than ten (10) to fifteen (15) working days per year. (*Id.*). In his final hypothetical, the ALJ used the same qualities as above, but added that the individual

---

[3] Light exertion, meaning the individual can lift and carry twenty (20) pounds occasionally and ten (10) pounds frequently; sit for six (6) hours, stand and walk combined for six (6) hours, and occasionally stoop, crouch, or reach overhead with both extremities. (Tr. 35).

[4] The individual would combine sitting, standing, and walking into a full eight (8) hour day. (Tr. 36).

5

would need to recline during an eight (8) hour workday, and asked the VE what effect that would have on her previous answers. (*Id.*). The VE stated that reclining during an eight (8) hour day would most likely not be tolerated in a work setting and that the individual would not likely be able to perform competitive work. (Tr. 37).

Based on the VE's testimony, Plaintiff's testimony, and the entirety of the record, the ALJ determined that Plaintiff's RFC renders her capable of performing past relevant work, and therefore, is not disabled as defined in the Social Security Act, §§ 216(i) and 223(d). (Tr. 19).

**II.     ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial work activity" is work activity that involves doing significant physical or mental activities. 20 C.F.R. § 404.1572(a). "Gainful work activity" is work that is done for pay or profit. 20 C.F.R. § 404.1572(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the claimant cannot claim disability. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment or a combination of medical impairments that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. (*Id.*). Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. § 404, Subpart P, Appendix 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant does not fulfill the requirements necessary to be declared disabled under the third step, the ALJ may still find disability under the next two steps of the analysis. The ALJ must first determine the claimant's residual functional capacity ("RFC"), which refers to the claimant's ability to work despite her impairments. 20 C.F.R. § 404.1520(e). In the fourth step, the ALJ determines whether the claimant has the RFC to perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is determined to be capable of performing past relevant work, then the claimant is deemed not disabled. (*Id.*). If the ALJ finds the claimant unable to perform past relevant work, then the analysis proceeds to the fifth and final step. 20 C.F.R. § 404.1520(a)(4)(v). In the last part of the analysis, the ALJ must determine whether the claimant is able to perform any other work commensurate with her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). Here, the burden of proof shifts from the claimant to the ALJ to prove the existence, in significant numbers, of jobs in the national economy that the claimant can do given her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c).

In the present case, the ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2014, and has not engaged in substantial gainful activity since her alleged onset date of disability. (Tr. 13). It was determined that Plaintiff has the following severe impairments: obesity, degenerative disc disease, status post fusion of C6-7, diabetes mellitus, hypertension, and headaches. (*Id.*). The ALJ also found Plaintiff's left ankle sprain, cervical sprain and reflux esophagitis are non-severe impairments. (Tr. 14). With regard to the third step, however, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the impairments" in the listings. (*Id.*). The ALJ found that all of Plaintiff's impairments,

7

individually or in combination, are insufficient to qualify Plaintiff for disability, noting that "[n]o examining or treating medical source has reported that [Plaintiff] has an impairment that medically equals the criteria of a listed impairment." (*Id.*).

Moving to the fourth step, the ALJ determined that, with some exceptions, Plaintiff "has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b)." (Tr. 15). The ALJ found that Plaintiff's impairments could reasonably cause her symptoms; however, her statements "concerning the intensity, persistence and limiting effects" of her pain were not fully credible to the extent that they were inconsistent with her RFC. (Tr. 16). After reciting the factors used to make the determination and "[g]iving [Plaintiff] the benefit of any reasonable doubt," the ALJ found that Plaintiff can "perform work activity in accordance with the residual functional capacity." (Tr. 17).

The ALJ held that Plaintiff could perform past relevant work as an electronic assembler and a group leader of circuit board assembly, as that work would not require activities precluded by Plaintiff's RFC. (Tr. 19). Because Plaintiff is capable of performing past relevant work in accordance with her RFC, she is "not disabled under sections 216(i) and 223(d) of the Social Security Act." (*Id.*).

### III.   Plaintiff's Argument for Reversal

Plaintiff presents two arguments for reversal: (1) the ALJ failed to evaluate and properly credit her testimony of disabling symptoms in accordance with the Eleventh Circuit Pain Standard, and (2) the ALJ failed to articulate good cause for giving less weight to the opinion of her treating physician. (Pl's Mem. 3, 11).

**IV.	Standard of Review**

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42 U.S.C. § 405(g) mandates that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id*. (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.	Discussion**

After careful review, the court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the ALJ applied the proper legal standards in reaching that decision. The court addresses each of Plaintiff's arguments below.

### A. The ALJ Properly Evaluated the Credibility of Plaintiff's Testimony of Disabling Symptoms in Accordance with the Eleventh Circuit Pain Standard and Social Security Regulations.

Plaintiff initially asserts that the ALJ's evaluation of her credibility is not supported by substantial evidence, and that the ALJ's determination was not in accordance with the Eleventh Circuit Pain Standard. (Tr. 3). According to the regulations set forth by the Social Security Administration, Plaintiff's statements regarding her alleged disabling pain are not, alone, enough to establish a disability. *See* 20 C.F.R. § 401.1529(a). The pain standard is comprised of both a threshold inquiry and a credibility determination. If a claimant meets the threshold inquiry, an ALJ is called upon to evaluate other factors to determine the credibility of the claimant's allegations of subjective symptoms. (*Id.*).

The Eleventh Circuit has established a standard to be applied to a claimant's assertion that she is disabled because of pain. In order for a claimant to satisfy the threshold inquiry, they must present: (1) evidence of an underlying medical condition, and (2) either objective medical evidence confirming the severity of the alleged pain, or that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991).

After this threshold inquiry is met, if the ALJ discredits a claimant's subjective testimony of disabling pain, the ALJ "must clearly articulate explicit and adequate reasons" for doing so. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also Holt*, 921 F.2d at 1223 (11th Cir. 1991). As part of the analysis used in determining credibility, the ALJ looks at intensity and persistence of the symptoms alleged by the claimant, as well as the extent to which the alleged symptoms affect the claimant's functional limitations. *See* 20 C.F.R. § 404.1529. There are

certain determinations that are solely the province of the ALJ and emphatically a determination of credibility is one of those. *See Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). Indeed, it is well-established that a reviewing court "will not disturb a properly articulated credibility finding that is supported by substantial evidence." *Strickland v. Comm'r of Soc. Sec.*, 516 Fed. App'x 829, 832 (11th Cir. 2013).

Plaintiff agrees that the ALJ articulated reasons for refusing to credit her testimony; however, she argues that those reasons lack substantial evidence. (Pl's Mem. 6-7). Plaintiff further contends that the ALJ "relied on isolated notations" and failed to consider the record as a whole when finding her subjective complaints lacked credibility. (Pl's Mem. 8). This court rejects that contention.

The ALJ specifically states in his decision that he "must make a finding on the credibility of the statements based on the consideration of the *entire* case record." (Tr. 15) (emphasis added). In formulating Plaintiff's RFC, the ALJ gave Plaintiff the benefit of reasonable doubt, and even considered limitations alleged by her that were not shown in either the treatment records or her medical history. (Tr. 17). In other words, the ALJ relied on the entire record, as well as Plaintiff's subjective complaints to reach his decision.

Additionally, Plaintiff argues that the ALJ failed to mention certain MRI's that were present in the medical record. (Pl's Mem. 7). However, these MRI's were referenced in the RFC assessment completed by Dr. Heilpern, and that RFC assessment was reviewed by the ALJ before he came to a conclusion. (Tr. 248). Plaintiff also argues that the ALJ did not consider her "lack of funds"[5] as the reason for discontinued treatment; however, the ALJ specifically notes in

---

[5] Plaintiff's brief states, "[t]he ALJ *did* properly consider the Plaintiff's *her* lack of funds to obtain continued medical treatment when assessing her credibility." (Pl's Mem. 9) (emphasis added). The typographical error in the sentence leads this court to presume Plaintiff failed to proofread, and indeed meant to assert that the ALJ did *not* properly consider Plaintiff's lack of funds. Nonetheless, the outcome *is* no different.

his decision that Plaintiff testified that she could not afford the $50 copayment for treatment. (Pl's Mem. 9, Tr. 15). The court finds that the ALJ considered the MRI's and Plaintiff's "lack of funds" in making his determination.

Also, Plaintiff contends that the ALJ's assertion that she obtained good results from treatment is not supported by substantial evidence. (Pl's Mem. 9). The objective medical evidence shows that after injections Plaintiff had "100% relief" that lasted "over two months." (Tr. 255). Following another injection, Plaintiff was reported to have "excellent relief." (Tr. 251). Plaintiff reported that after physical therapy she had a "50% relief" in pain. (Tr. 288). The court finds this to be substantial evidence which supports the ALJ's assertion that Plaintiff obtained good results from treatment.

To be clear, there is no requirement that the ALJ refer specifically to each and every piece of evidence in the record, so long as the determination is not a broad rejection. *Dyer*, 395 F.3d at 1211 (11th Cir. 2005) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). In other words, an error is not present merely because the ALJ did not specifically refer to each pain scale, test result or subjective complaint contained in the record. The ALJ listed numerous details of the entire record and Plaintiff's subjective complaints; the fact that he did not include each piece of evidence does not convince this court there is a lack of substantial evidence.

In addition to the above reasons, the ALJ found Plaintiff's allegations of pain not credible because her own statements were inconsistent. The ALJ states that Plaintiff testified she could not perform household duties; however, she had previously described performing an abundance of household chores and daily activities.[6] (Tr.17). Plaintiff argues that the ability to perform regular daily activities does not necessarily preclude a finding of disability, and she is correct.

---

[6] Specifically, Plaintiff reported in her SSA Function Report that her daily activities included: "fix breakfast, kids ready, do dishes, wash clothes, fold clothes, lunch[,] feed kids, sweep, vacuum, supper[,] feed kids, baths for kids to bed me wash dishes, bath bed." (Tr.133).

12

(Pl's Mem. 10-11).  Participation in everyday activities, such as housework, does not itself preclude disability.  *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).  The ALJ, however, did not use Plaintiff's daily activities themselves to determine she was not disabled; he relied upon evidence of her daily activities to show she had a capacity greater than she alleged.  (Tr. 17).  Furthermore, the ALJ found that Plaintiff's recent limited activity level was outweighed by other factors.  (*Id.*).

For instance, Plaintiff claimed she could only stand or sit for limited periods, but reported being able to take care of her children, sweep, vacuum, and cook three complete meals each day.  (Tr. 133-35).  Plaintiff's testimony at the hearing was markedly different, as she reported an inability to do any housework at all.  (Tr. 31).  The daily activities of Plaintiff are relevant to the extent they show a contradiction of her own claims, as well as the RFC.  *See Parks v. Comm'r of Soc. Sec.*, 353 Fed. App'x. 194, 197 (11th Cir. 2009) (holding that the ALJ's rejection of claimant's subjective pain testimony was based on substantial evidence, because the effectiveness of claimant's medication and her ability to perform chores, drive, and attend church were inconsistent with her testimony of debilitating pain.)

Because the ALJ articulated adequate reasons for discrediting Plaintiff's subjective complaints in accordance with the factors set forth in 20 C.F.R. §§ 404.1529 and 416.929, the court finds there is substantial evidence to support his determination on Plaintiff's credibility.

    **B.**    **The ALJ Properly Articulated Good Cause for Giving Less Weight to the Opinion of Plaintiff's Treating Physician.**

Plaintiff contends that the ALJ erred by not relying on the opinion of her treating physician, Dr. Craze, but instead gave significant weight to the non-examining State agency reviewing medical expert, Dr. Heilpern, and the consultant examiner, Dr. Ismail.  (Pl's Mem. 12).  Specifically, the ALJ stated he gave little weight to Dr. Craze's opinion "regarding the

13

frequency and severity of [Plaintiff's] complaint of pain" because her opinion was "inconsistent with her own treatment records." (Tr. 18). Because the record contains substantial evidence to support the ALJ's opinion, Plaintiff's argument to the contrary is unpersuasive.

The Eleventh Circuit has made it clear that the opinion of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis*, 125 F.3d at 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986)). Failure of the ALJ to "clearly articulate" good cause for discounting the treating physician's opinion constitutes reversible error. (*Id.*). "Good cause" is shown when the opinion of the treating physician is unaccompanied by objective medical evidence or is inconsistent with the record as a whole. *See* 20 C.F.R. §§ 404.1527(c) and 416.927(c)(2); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159-60 (2004); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In addition, good cause is found where the treating physician's opinion is "inconsistent with [her] own medical records." *Lewis*, 125 F.3d at 1440 (11th Cir. 1997) (citing *Jones v. Dep't of Health & Human Serv.*, 941 F.2d 1529, 1532-33 (11th Cir. 1991); *Edwards v. Sullivan*, 937 F.2d 580, 583 (11th Cir. 1991). Medical experts are considered experts in their respective fields, as well as in Social Security disability programs. *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i); SSR 96-6p, 1996 WL374180. Opinions of medical experts may be given greater weight than opinions of treating and examining sources as long as there is substantial evidence in the record to support the opinion. *See* 20 C.F.R. §§ 404.1512(b)(6), 404.1527(e)(2)(i) and (iii), 416.912(b)(6), 416.927(e)(2)(i) and (iii); SSR 96-6p WL374180; *Crawford*, 363 F.3d at 1159-60 (11th Cir. 2004); *Jarrett v. Comm'r of Soc. Sec.*, 422 Fed. App'x. 869, 872-74 (11th Cir. 2011).

Here, the ALJ applied the correct legal standards. First, the ALJ clearly articulated that he gave little weight to Dr. Craze's opinion "regarding the frequency and severity of [Plaintiff's] complaint of pain" because it was inconsistent with her own treatment records. (Tr. 18). Dr. Craze's letter states Plaintiff has "persistent off and on pain," "frequent headaches," and has "missed work because of the frequency and severity of the pain." (Tr. 340). Despite these assertions, Dr. Craze's own medical treatment records for Plaintiff state that prior to her alleged onset date of disability, Plaintiff's "[p]hysical exam is completely unremarkable." (Tr. 191). Visits show Plaintiff exhibited no difficultly ambulating, no decreased range of motion, tenderness, misalignment, instability, or muscle weakness. (Tr. 184-85). After an MRI to rule out a herniated disc, Dr. Craze diagnosed Plaintiff with only "neck sprain and strain," and stated that she had "some degenerative disc disease in her neck." (Tr. 186-87, 273). Furthermore, Dr. Craze's record shows that Plaintiff had "excellent relief from prior epidural steroid injections." (Tr. 277). Taking into consideration Dr. Craze's records as a whole, the court concludes the ALJ correctly afforded little weight to the opinion of Plaintiff's treating physician.

In contrast to the weight given Dr. Craze's opinion, the ALJ gave the opinions of Dr. Ismail and Heilpern significant weight, citing their opinions as being "consistent with the record as a whole and [Plaintiff's] residual functional capacity." (Tr. 18). The ALJ extensively listed details from the medical record in his decision, and determined that the opinions of the non-treating physicians were more consistent with the record than the opinion of the treating physician. After carefully reviewing the record, this court finds there is substantial evidence to support the ALJ's determinations regarding the weight to be afforded to the treating and the non-treating physicians.

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this November 21, 2014.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE